IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| DAVID C. CLIFTON,             ) | |
| ) | C.A. No. 3:11-cv-50-CMC |
| Plaintiff,       ) | |
| ) | |
| vs.                     ) | OPINION AND ORDER |
| ) | ON MOTION FOR |
| CITIMORTGAGE, INC., and       ) | JUDGMENT ON THE PLEADINGS |
| NATIONSTAR MORTGAGE, LLC,  ) | |
| ) | |
| Defendants.   ) | |
| _____) | |

This matter is before the court on motion of Defendant Nationstar Mortgage, LLC ("Nationstar") for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. A motion under Rule 12(c) is filed "[a]fter the pleadings have closed[.]" As Nationstar has not yet answered, this rule is inapplicable. The court will, therefore, construe Nationstar's motion as a motion to dismiss the amended complaint pursuant to Rule 12(b)(6).[1]

**STANDARD**

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claims that entitles him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D.*

---

[1] The same standards are applied under both subparts of Rule 12. The court would, therefore, reach the same result if it analyzed the motion under Rule 12(c).

*Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, F.3d at 302). *See also Wolman v. Tose*, 467 F.2d 29, 33 n.5 (4th Cir. 1972) ("Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present.").

Thus, in applying Rule 12(b)(6) the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, a plaintiff in any civil action must include more than mere conclusory statements in support of his claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (court need only accept as true the complaint's *factual* allegations, not its legal conclusions); *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003) (holding that "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief.").

**DISCUSSION**

**I.    Adequacy of Service**

Nationstar begins its discussion by referring to possible defects in the service or sufficiency of process. Dkt. No. 17 at 6. As Plaintiff, David C. Clifton ("Clifton"), notes in his opposition

memorandum, Nationstar neither offers evidentiary support for the claimed deficiencies nor expressly moves for dismissal based on any such defect.[2]

Nationstar again addresses possible service defects in its reply. As in its opening memorandum, Nationstar refers to but does not provide evidence of the alleged defects. *See* Dkt. No. 23 at 3-4. Despite repeating its concerns as to adequacy of service, Nationstar states that it "will acknowledge the documents as properly served and is willing to formally acknowledge service, if the case survives [this] motion." *Id.* at 23. As the case survives Nationstar's motion, at least in part, the court deems this statement a waiver of whatever defects in service, if any, exist.

**II.     Count I – Real Estate Settlement Procedures Act**

Nationstar first moves to dismiss Clifton's claim for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. ("RESPA"). Nationstar characterizes the amended complaint as alleging that Clifton made only a single qualified written request to which Nationstar allegedly failed to respond, although it concedes Clifton alleges that a second "unspecified demand" was sent to Nationstar on Clifton's behalf to which Nationstar also allegedly failed to respond. Dkt. No. 17 at 6. Based on this characterization of the amended complaint, Nationstar argues that "the single alleged qualified written request is legally insufficient to establish a pattern or practice of non-compliance" and that Clifton's damages are limited to no more than $1,000. *Id.* at 7.[3]

---

[2] Such a motion would be pursued under Rule 12(b)(4) (insufficiency of process) or (5) (insufficiency of service of process), not under Rule 12(b)(6) or (c).

[3] This argument, like most of Nationstar's arguments on the federal claims, is supported only by citation to unpublished district court decisions. Nationstar fails to attach the cited decisions as required by Local Civil Rule 7.05(A)(4) D.S.C. Clifton, likewise, fails to attach copies of most of the unpublished opinions he cites. Fortunately, the court was able to locate and has considered each of the cited unpublished opinions. The parties should not, however, anticipate similar assistance from the court as to any future motions.

3

Nationstar's cryptic argument is not supported by any quotation of the statute or explanation of the significance of the phrases "qualified written request" or "pattern or practice." The only authority cited is a single unpublished decision which held that a "pattern or practice of non-compliance" was established where plaintiffs proved their bank "fail[ed] to respond to five written requests." *Id.* (citing *Serfass v. Cit Group/Consumer Fin., Inc.*, 2008 U.S. Dist. LEXIS 68946) (emphasis added).[4] While this opinion supports the proposition that five failures to respond is enough to establish a pattern or practice, it does not suggest what lesser number would be too few to establish a pattern or practice. Neither does it indicate whether the failures must all relate to the plaintiff. Thus, *Serfass* does not support dismissal of Clifton's claim that Nationstar engaged in a "pattern or practice" of RESPA violations. Even if it did, Nationstar has not explained what significance that determination would have for its motion.[5]

That significance is, however, explained in Clifton's response which quotes the relevant provisions of the statute and persuades the court that Clifton has adequately pleaded a claim under RESPA. As Clifton explains, the statute requires entities which service mortgage loans to acknowledge receipt of a qualified written request within twenty days and to take appropriate corrective action within sixty days. 12 U.S.C. § 2605(e)(1)-(2). It authorizes a claim for actual damages for any failure "to comply with any provision of this section[.]" 12 U.S.C. § 2605(f). Critically, a claim for actual damages is available without proof of a pattern or practice. 12 U.S.C.

---

[4] The cited opinion consists of the findings of fact and conclusions of law entered by Magistrate Judge William M. Catoe after consensual referral. *See* 2008 WL 4200356 (D.S.C. 2008).

[5] The relevant statutory requirements are found in 12 U.S.C. § 2605(e). Nationstar refers to this section only in passing, as the statutory basis for Clifton's RESPA claim. It neither quotes nor explains the statute's relevant content.

4

§ 2605(f)(1)(A). Proof of a pattern or practice, while not required for actual damages, may support recovery of additional damages, beyond actual damages, "not to exceed $1,000." *See* 12 U.S.C. § 2605(f)(1)(B).

Nationstar's reply suggests that the amended complaint includes admissions which preclude Clifton's present arguments. The court disagrees. While Clifton's response arguably recharacterizes his allegations in some respects, the recharacterizations are not as significant as Nationstar suggests. For example, the court finds the amended complaint susceptible to inferences that Clifton made two qualified written requests (the second through counsel), that Nationstar received both, and that Nationstar failed to respond to either within the time required. The most significant of the arguable recharacterizations relates to the precise nature of Nationstar's role. The amended complaint alleges that the mortgage loan was "sold or transferred" to Nationstar, arguably suggesting a transfer of *ownership* of the loan. In his response to Nationstar's motion, Clifton suggests the "transfer" was only of *servicing*. Even if this is a recharacterization, it is of no significance to Clifton's RESPA claim. In any event, the court must draw all inferences in Clifton's favor at this stage in the proceedings and concludes that the allegation of a "sale or transfer" is susceptible to an inference that only the servicing was transferred and the underlying loan remained the property of Nationstar's co-Defendant, Citimortgage, Inc. ("Citimortgage").

Nationstar also argues on reply that allegations of the amended complaint effectively admit that (1) Nationstar (at some point) responded to Clifton's request by stating it had never received Clifton's check; and (2) this response must have come within sixty days of receipt as the second letter sent on Clifton's behalf was mailed within thirty days of the first. While these are possible inferences from the allegations, they are not the only reasonable inferences. Thus, they will not be

5

deemed "admissions" dispositive of the RESPA claim. Moreover, even if the inferences suggested by Nationstar were accepted, it would not require a finding that Nationstar satisfied both RESPA's requirements to (1) *acknowledge* both letters within twenty days and (2) *take appropriate action* to correct any errors within sixty days.[6]

For the reasons set forth above, the court denies Nationstar's motion to dismiss Clifton's RESPA claim. The court will, however, require Clifton to clarify his allegations (on a Defendant-specific basis) in the event he files a second amended complaint.[7]

### III.    Count II - Fair Debt Collection Practices Act

Nationstar moves to dismiss Clifton's claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), arguing, first, that pursuit of "foreclosure is not an attempt to collect a debt but to enforce an interest in real property, to which the Act is inapplicable." Dkt. No. 17 at 7.[8] In support of this proposition, Nationstar relies on *dicta* from an

---

[6] Nationstar did not make such a specific argument in its opening memorandum. This deprived Clifton of an opportunity to respond to what amounts to new arguments raised on reply. The court would not, therefore, allow these arguments to be dispositive on the present motion even if legally persuasive.

[7] Although the court denies Nationstar's motion as to both federal claims, it finds Clifton's factual allegations only minimally adequate to support either. This is largely because the multiple causes of action are set out in boilerplate form, with virtually no reference to the relevant facts other than a generic incorporation of earlier factual recitations. This poses particular difficulties because all claims are asserted jointly against two Defendants which took distinct actions at different times. Thus, Defendants and the court are left to guess at which actions of which Defendant are intended to satisfy the various elements of Clifton's seven causes of action.

[8] In both its opening memorandum and reply, Nationstar cites the FDCPA as *16* U.S.C. § 1692. The correct citation is *15* U.S.C. § 1692. The specific provision critical to Nationstar's motion is found in the definition section, 15 U.S.C. § 1692a.

unpublished report and recommendation ("Report") of a magistrate judge.[9] The critical language in the Report is followed by a "*cf*" citation to a Fourth Circuit decision which appears to state a proposition contrary to that for which it is cited in the Report. *Compare Sain v. HSBC Mortg. Servs., Inc.*, 2010 WL 2902741*3 (D.S.C. 2010) *with Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 376 (4th Cir. 2006).[10]

In his response, Clifton notes the apparent conflict between the relevant statement in the unpublished magistrate judge's Report (*Sain)* and the published Fourth Circuit decision (*Wilson*). Rather than addressing this point on reply, Nationstar elaborates on *Sain*, noting the magistrate judge's recommendation turned on a determination that the then-remaining plaintiff, an individual named Jolly, was not a "consumer" as that term is used in the FDCPA because he was not the debtor on the note, only the person holding title to the property under a quitclaim deed.[11]  While this may

---

[9] Although unpublished, the Report was adopted by the district court in a summary decision. *See* 4:08-cv-02856-TLW (Dkt. No. 87).

[10] The Report in *Sain* stated that the collection efforts at issue, which included foreclosure proceedings ,"were not [efforts] to collect money from a consumer, but to enforce an interest in real property." *Sain* at *3.  Citing to *Wilson* for this proposition, the Report continues: "The FDCPA's purpose is to protect consumers from debt collectors attempting to collect funds, not attempts to foreclose interests in property." *Id.* (concluding that FDCPA was inapplicable because plaintiff was not a "consumer"). Rather than supporting this proposition, *Wilson* disagreed with a similar argument noting that plaintiff's "'debt' remained a 'debt' even after foreclosure proceedings commenced." *Wilson*, 443 F.3d at 376. As the Fourth Circuit explained, accepting defendant's argument

> would create an enormous loophole in the [FDCPA] immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods.

*Id.*

[11] The mortgage loan at issue was entered into between Sain and a mortgage lender. Jolly acquired the property from Sain through a quitclaim deed, after Sain fell behind on his mortgage payments. This transaction was apparently intended to avoid foreclosure. *See Sain* at n.1. Although

7

demonstrate that the result in *Sain* was correct despite the apparent mischaracterization of *Wilson*, it only serves to distinguish *Sain* from the present case. Unlike Jolly, the plaintiff whose claim is discussed in *Sain*, Clifton *is* the debtor on the mortgage loan at issue in this action.

Nationstar also argues that it is not a debt collector because "creditors, mortgagor and mortgage servicing companies are not debt collectors under the FDCPA[.]" Dkt. No. 17 at 7 (citing *Glover v. Univ. Motor Co.,* LEXIS 123401(D.S.C. 2009)[12]; *Barnhill v. Bank of Am.*, 378 F. Supp. 2d 696, 698-704 (D.S.C. 2005). On its face, this is a more persuasive argument as the statute itself excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor" from the definition of "debt collector." 15 U.S.C. § 1692a(6)(A).

Clifton responds by arguing that this exclusion is subject to a limitation when the debt was in default at the time of transfer or assignment. *See* Dkt. No. 22 at 10 (discussing *Scott v. Wells Fargo Home Mortg., Inc*., 326 F. Supp. 2d 709, 716-18 (E.D. Va. 2003)). In the case Clifton cites, *Scott*, the court granted summary judgment to a mortgage servicing company on an FDCPA claim because "the law is well-settled . . . that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." 326 F. Supp. 2d at 718. Thus, *Scott* does not, itself, support Clifton's position.

*Scott* does, however, cite a Fifth Circuit decision which held that the exception from the definition of "debt collectors" is applicable to assignees "as long as [the] debt was not in default at

---

the arrangement between Sain and Jolly may have required Jolly to make the payments on Sain's mortgage loan, the Report concludes that Jolly was not a consumer because he never became an obligor on the Sain note and mortgage. *Id.* *3.

[12] The court has located this decision at 2010 WL 234903. This citation covers the magistrate judge's report and order adopting the same.

8

[the] time it was assigned." *Id.* at 717 (citing *Perry v. Stewart Title Co.,* 756 F.2d 1197, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)). The critical language in *Perry* is as follows:

> The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, *as long as the debt was not in default at the time it was assigned. See* S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1698. *See also Kizer v. Finance America Credit Corp.*, 454 F. Supp. 937, 939 (N.D.Miss.1978).

756 F.2d at 1208 (emphasis added). This language suggests that the limitation on the exclusion from the definition of debt collector applies to *any* assignment (and possibly other transfers) of a debt which is in default at the time of assignment (or transfer).

However, a narrower interpretation, limited to third-party *servicers* or other non-owners of the debt, is suggested by the legislative history. That history, which is cited in *Perry*, indicates that the definition of debt collector is not intended to cover "mortgage *service* companies and others who *service* outstanding debts for others, so long as the debts were not in default when taken for servicing[.]" S. Rep. No. 95-382, 95th Cong., 1st Sess. 3 (under heading EXPLANATION OF THE LEGISLATION – Scope of the act) (emphasis added).

This more limited intent is also reflected in the plain language of the statute which excludes from the following from the definition of "debt collector":

> (F) any person collecting or attempting to collect any *debt owed or due or asserted to be owed or due another* to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) *concerns a debt which was not in default at the time it was obtained by such person*; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C § 1692a(6)(F) (emphasis added).[13]

In its reply, Nationstar relies on Clifton's "judicial admission that the loan was sold or transferred to Nationstar." Dkt. No. 23 at 7 (citing Am. Complaint ¶ 12). Although Nationstar does not cite either to *Perry* or Section 1692(a)(6)(F), the court understands this as an argument that the limitation on the exclusion from the definition of "debt collector" referenced in *Perry* and found in Section 1692(a)(6)(F) is inapplicable to Nationstar because Nationstar acted as *owner* of the loan, rather than as third-party *servicer*.[14] Assuming the factual premise is correct, this argument is consistent with the language of the statute and legislative history. On the other hand, *Perry* may suggest a broader interpretation of the exception.

The precise nature of Nationstar's role (as servicer or mortgage holder) may, therefore, be critical to whether the FDCPA applies to it. Regardless of the scope of the limitation, the court finds it inappropriate for resolution on the present motion as Clifton's allegations suggest some

---

[13] Clifton cites *Scott* and another (unpublished) district court decision. He does not cite or discuss *Perry* (although *Perry* is cited in *Scott*). Neither does he cite or discuss the legislative history or the on-point statutory provision (although both are cited in *Perry*). Nationstar, likewise, fails to cite or discuss any of these authorities. Thus, what the court has found and believes to be the critical authority has not been addressed by the parties.

In future memoranda, the parties should provide direct citation to the relevant statutory language, published appellate decisions, published district court decisions and relevant legislative history (generally in that order). While the court will not prohibit reliance on unpublished district court decisions, it finds such decisions useful only in the absence of the other categories of authority listed above.

[14] Nationstar relies solely on Clifton's alleged "admission." It does not state or provide support for the premise that it was, in fact, owner rather than third–party servicer. While such support might go beyond the pleadings, it would likely be of a similar nature to the documentation of which Nationstar has asked the court to take judicial notice: loan documents which were submitted as attachments to Nationstar's motion. Those documents reveal the initial transfer of ownership of the mortgage from the originating mortgage company to Citimortgage but do not reveal any transfer to Nationstar, much less the nature of the transfer.

10

uncertainty as to the nature of the transfer between Citimortgage and Nationstar, leaving open the possibility that the transfer was only of servicing. This is not information which would, necessarily, have been available to Clifton at the time the amended complaint was filed.

The court, therefore, finds the allegations of the amended complaint sufficient to withstand Nationstar's motion to dismiss even if the limitation on the exclusion from the definition of debt collector is as limited as Nationstar suggests. The court reserves the determination of the extent of that limitation until after discovery closes and the issue has been properly briefed. *See supra* n. 13. In the event Clifton files a second amended complaint, he shall, however, clarify the nature of the transaction between Citimortgage and Nationstar and Nationstar's role to the extent known to him. As appropriate, he may plead in the alternative.

## IV.  Count III – South Carolina Unfair Trade Practices Act

Nationstar argues that Clifton's claim for violation of the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-10 *et seq.*, ("SCUTPA"), should be dismissed because Clifton has not "alleged or established" a potential for repetition (or other basis for showing an impact on the public interest). Dkt. No. 17 at 8. Of course, at this point, Clifton need not have "established" any element of any of his causes of action.

The court, therefore, looks to whether Clifton has *pleaded* a potential for repetition. He has done so only in a boilerplate paragraph which refers to both Defendants and is devoid of any factual specificity. Dkt. No. 7 ¶ 38. The earlier factual allegations suggest little in the way of support for an inference of potential for repetition, beyond the potential present in every business with multiple similar transactions and the possible allegation (or inference) that Nationstar may have twice failed to timely respond to correspondence from Clifton or others acting on his behalf.

11

In his response, Clifton points to an out-of-state case involving similar allegations which he suggests may assist in establishing the potential for repetition. He also argues that he should be allowed discovery on this issue.

The court will not consider the out-of-state case in opposition to Nationstar's motion as it is not referenced in the amended complaint.[15] The court does, however, agree that the potential for repetition is an element which, in most cases, must be pleaded fairly generically given the nature of the claim. Still, Clifton must do the best he can with what information is available to him. Here, he has not done so, in part due to the complete disconnect between the factual allegations and his various causes of action. The court, therefore, dismisses the SCUTPA claim with leave to replead.

## V.    Counts IV through VI – State Common Law Claims

Nationstar argues that all three of Clifton's state common law claims (breach of fiduciary duty, negligence, negligent misrepresentation) should be dismissed because the relationship between the parties is based on contract and Clifton has alleged no facts supporting any duty independent of Nationstar's contractual obligations. Dkt. No. 17 at 10. Clifton responds by pointing to various possible sources of duties other than any contract which might exist between himself and Nationstar. He also suggests that he may not be in privity of contract with Nationstar. The potential sources of any extra-contractual duties may not, however, be discerned from the amended complaint. The court, therefore, dismisses the remaining state law claims with leave to replead to cure this deficiency. Other concerns as to the adequacy of pleading of these claims are discussed below.

---

[15] The court does not suggest any view as to whether actions occurring in other states might support the public impact requirement under the SCUTPA.

### A.     Count IV – Breach of Fiduciary Duty

Nationstar correctly argues that a debtor-creditor relationship generally does not give rise to a fiduciary duty. Clifton responds that Nationstar's correspondence with him, in which it referred to an "unapplied sum," might bring this case within an exception applicable when a special sum is held in trust. For purposes of this order, the court assumes without deciding that an escrow account held by a mortgage company or servicer might fall within this exception.

Although Clifton has suggested a basis for imposition of a fiduciary duty, his present allegations do not suffice for this purpose. The court, therefore, dismisses the breach of fiduciary duty claim without prejudice.

### B.     Counts V & VI – Negligence and Negligent Misrepresentation

As noted above, Nationstar's challenge to the negligence and negligent misrepresentation claims is based primarily on an argument that there is no allegation of a duty independent of the contract between the parties. Clifton responds that he does not allege that Nationstar owns or holds the promissory note, thus, his claim is not based on contract. While there may be no such express allegation, Clifton did allege that the account was "sold or transferred" to Nationstar, which may give rise to an inference that Clifton and Nationstar are in privity of contract due to a transfer and assignment of the note.

Clifton also argues that he may pursue claims for other than "purely economic losses" in tort, even if the relationship is based on contract. Assuming without deciding that his claimed loss (emotional distress) falls outside the so-called economic loss rule, Clifton would still need to allege

a legal basis for his claim of a *duty* independent of the contract (not just non-economic injuries).[16] While the court finds the existence of such a duty doubtful as to Clifton's negligence claim, it will allow him the opportunity to attempt to cure this defect.

As to the negligent misrepresentation claim, Nationstar's economic interest in the transaction may give rise to a duty to transmit accurate information. Thus, a negligent misrepresentation claim is at least theoretically possible based on the relationship between Clifton and Nationstar. The difficulty for Clifton is that he has not alleged what statements by Nationstar constituted misrepresentations. While Fed. R. Civ. P. 9(b) may not apply to a claim for negligent misrepresentation, Nationstar is entitled, at the least, to know what statement(s) Clifton alleges constituted the misrepresentation. This cannot be discerned from the amended complaint, in part because of the boilerplate nature of the allegations within the various causes of action. Thus, this deficiency must be cured if Clifton elects to include this claim in a second amended complaint.

## CONCLUSION

For the reasons set forth above, the court construes Nationstar's motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), denies that motion as to the RESPA and FDCPA claims, and grants it as to all state law claims. The dismissal of the state law claims is without prejudice to filing a second amended complaint.

If Clifton elects to file a second amended complaint, he shall do so within fourteen calendar days after entry of this order. So long as a second amended complaint does not allege any causes of action beyond those found in the first amended complaint, it may be filed without further motion.

---

[16] Clifton's argument seems to be that, because he claims "extracontractual" injuries, the injuries must be the result of violation of an extracontractual duty. If this is Clifton's position, it needs further support.

14

If filed, a second amended complaint shall set forth the counts against the two Defendants separately, repeating the relevant factual allegations within each count in a manner which links the factual allegations to the elements of each claim and shall allege the factual and legal foundation for any claim of a common law duty.

Nationstar's deadline for answering shall be extended until the earlier of twenty-one days following entry of this order (if no second amended complaint is filed) or twenty-one days following service of a second amended complaint if such a complaint is filed.

**IT IS SO ORDERED.**

                                              s/ Cameron McGowan Currie
                                              CAMERON MCGOWAN CURRIE
                                              UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 11, 2011